175 F.3d 1150
 99 Cal. Daily Op. Serv. 3300, 1999 Daily
Journal D.A.R. 4262
UNITED STATES of America, Plaintiff-Appellant-Cross-Appellee,
v.
Brenda Lee WORKING, Defendant-Appellee-Cross-Appellant.
 Nos. 98-30121, 98-30122.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1999.
Filed May 6, 1999.
 
 Arlen R. Storm, Assistant United States Attorney, Tacoma, Washington, for the plaintiff-appellant-cross-appellee.
 Wayne C. Fricke, Law Offices of Monte E. Hester, Inc., Tacoma, Washington, for the defendant-appellee-cross-appellant.
 Appeals from the United States District Court for the Western District of Washington; Jack E. Tanner, District Judge, Presiding. D.C. No. CR-97-05366-1-JET.
 Before: PREGERSON and THOMPSON, Circuit Judges, and TAKASUGI,[1] District Judge.
 PREGERSON, Circuit Judge:
 
 
 1
 This case is about a woman pushed to her breaking point by a husband who continually abused her with threats and lies until one day she snapped and shot him. It is also about a district court's exercise of discretion to depart downward from the applicable Sentencing Guideline range because it found that her behavior was "aberrant."
 
 I.
 
 2
 Brenda and Michael Working were married on September 8, 1990. At the time, Michael had two young sons from an earlier marriage. Later, Brenda and Michael had two daughters.
 
 
 3
 Despite outward appearances, their family was troubled. Michael was psychologically and verbally abusive toward his sons and toward Brenda. Before Michael's oldest son graduated from high school, Michael permanently kicked him out of the house. Things came to a head in early 1997 when Michael accused Brenda of having an inappropriate relationship with his other son.
 
 
 4
 After the accusation, Michael moved out of the house and into a cottage on the premises. Brenda stayed in the house with the remaining children. But Michael continued to come into the house at will and harass Brenda with false accusations about her relationship with his son. He towered over her, yelled at her, pushed and shoved her, and threatened to take away the two girls saying, "Just wait, Brenda, I'm going to take those kids from you. You're never going to see them again."
 
 
 5
 Michael made good on his threats when he filed for divorce on July 16, 1997. In the divorce petition he alleged sexual misconduct by Brenda and sought sole custody of the couple's daughters. Brenda sought a restraining order against Michael because she was afraid of him and feared that he might run away with the girls. The restraining order was denied.
 
 
 6
 On August 2, 1997, a few days before a hearing on the divorce petition was to be held, Brenda picked up a handgun that she had purchased a week earlier from a pawn shop. At approximately 10:45 p.m. that evening, Brenda called Michael at the cottage. She told him that her minivan had broken down along the road that goes through Fort Lewis, Washington, and that she had their daughters with her. She asked Michael to come and pick them all up.
 
 
 7
 Michael arrived at the location around 11:00 p.m. He spotted the minivan and maneuvered his Ford Bronco next to it. Brenda approached Michael while he remained seated in his car. Without warning, Brenda pulled out her gun and began shooting. Michael ducked down into the passenger side of the front seat but was hit in the left arm and shoulder. When Brenda stopped shooting, Michael started his Bronco and drove it into some bushes. He climbed out of his car, hid in the bushes, and watched Brenda reload. Brenda repositioned the minivan so that the headlights shone on the bushy area where Michael was hiding. Michael started to run and Brenda shot him. Michael turned around and rushed Brenda, knocking her to the ground. During the ensuing struggle, Brenda struck Michael on the head several times with the gun. Michael hit Brenda in the face two times and then fled. The police obtained a taped statement from Michael, who was in the hospital, and arrested Brenda the day after the shooting.
 
 
 8
 Brenda pled guilty to use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and assault with intent to commit first degree murder, in violation of 18 U.S.C. § 113(a)(1). At the sentencing hearing, the district court sentenced Brenda to the mandatory minimum five year term of imprisonment for the firearm offense. For the assault offense, Brenda argued that the district court should depart downward from the applicable sentencing range in the Sentencing Guidelines because her behavior was aberrant. The Government agreed that the court had the legal authority to depart downward but urged the court to reject departure in Brenda's case.
 
 
 9
 The court found Brenda's behavior aberrant and departed downward by 21 levels. It sentenced Brenda to one day in prison for the assault offense. The one-day sentence was to run consecutively with the five-year mandatory minimum sentence.[2] This brought Brenda's total sentence to five years and a day in prison. The court noted that if it had the authority to do so, it would have departed downward for the firearm offense. The court further imposed three years of supervised release and ordered restitution in the sum of $114,980 primarily for Michael's medical expenses.
 
 
 10
 The Government appeals and argues (1) that the district court clearly erred in finding Brenda's behavior aberrant; and (2) that the court abused its discretion when it departed downward by 21 levels on the assault offense. Brenda cross-appeals asserting that the district court did have discretion to depart downward on the mandatory minimum five-year sentence for the firearm offense. We affirm.
 
 II.
 
 11
 The district court had jurisdiction because the incident took place on Fort Lewis, a federal military base located in the state of Washington. See 18 U.S.C. § 7. This court has jurisdiction under 28 U.S.C. § 1291.
 
 III.
 
 12
 We review the district court's finding of aberrant behavior for clear error. See United States v. Green, 105 F.3d 1321, 1322 (9th Cir.1997); U.S. v. Fairless, 975 F.2d 664, 666 (9th Cir.1992). "A single act of aberrant behavior may be a mitigating circumstance justifying a downward departure from the applicable Guideline range." Fairless, 975 F.2d at 667. A determination of aberrant behavior must be based on a "convergence of factors." Id. at 668. Factors have included
 
 
 13
 (1) the singular nature of the criminal act, (2) spontaneity and lack of planning, (3) the defendant's criminal record, (4) psychological disorders the defendant was suffering from, (5) extreme pressures under which the defendant was operating ..., (6) letters from friends and family expressing shock at the defendant's behavior, and (7) the defendant's motivations for committing the crime.
 
 
 14
 United States v. Colace, 126 F.3d 1229, 1231 n. 2 (9th Cir.1997).
 
 
 15
 The district court found Brenda's behavior aberrant based on a "convergence of factors." First, it found that Brenda's assault of Michael was singular in nature and that Brenda lacked any prior criminal record. Second, the court found that Brenda was suffering from "significant depression" at the time of the shooting and that she was undergoing counseling for her depression. A psychiatric evaluation of Brenda by Dr. Sean M. Killoran stated that "[t]he severity of her depressive symptoms at the time of the offense and her sense of hopelessness coupled with the desperate quality of her situation markedly impaired her usual judgment and decision making."
 
 
 16
 Third, the court found that Brenda was under extreme pressure because Michael's false accusations of sexual misconduct posed a threat to her future custody of their daughters. The court stated that, "there is no question in this court's mind that what happened was [a result of] the pressure of losing her two daughters."
 
 
 17
 Fourth, the court was moved by numerous letters from friends and family expressing shock at Brenda's behavior. In particular, the court noted that Michael's own sons wrote in Brenda's favor. One son wrote, "I understand that Brenda shot my Dad, but if you only knew him like any one of us who has lived with him then you might begin to understand how he pushes and pushes a person until they completely go over the edge." His son continued, "My Dad will not stop until he has completely broken his victim down.... I realize that what Brenda did was very wrong, but I know that she was finally driven to the breaking point by my father."
 
 
 18
 Finally, the court found that Brenda's sole motivation for her crime was to protect her family. The district judge asked Brenda why she shot Michael, and she replied, "[p]rotection of the kids and the pain." He asked her whether she was motivated by the property dispute with Michael. Brenda stated, "I didn't think about the jobs and property. I just snapped, [I] had enough of this terror I felt, this constant coming at me.... I became somebody I don't know because ... I just wanted him to shut up and stop screaming and threatening and hurting [us]."
 
 
 19
 The Government concedes that the district court has discretion to depart downward based on a finding of aberrant behavior but disagrees that Brenda's behavior was aberrant. In its briefs and during oral argument the Government argued that this case involves a run-of-the-mill divorce, stating that many divorces involve tense custody battles and "a great deal of animosity." The Government further argued that Brenda's motives were not "pure," because she was after the couple's property. But the district judge disagreed, stating that the Government's description of the events had "been contradicted" by the "letters I've received."
 
 
 20
 In light of the "convergence of factors," we find no clear error in the district court's determination that Brenda's behavior was aberrant.
 
 IV.
 
 21
 We review a district court's decision to depart from the applicable Sentencing Guideline range for abuse of discretion. See Koon v. United States, 518 U.S. 81, 91, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). "Reversal is required only if the [departure] is unreasonable." Fairless, 975 F.2d at 666. "The reasonableness determination looks to the amount and extent of the departure in light of the grounds for departing." Williams v. United States, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).
 
 
 22
 The Government argues that the departure in this case was unreasonable because of its magnitude. As the Government describes it, the district court departed downward by an "unprecedented" 21 offense levels, from a sentencing range of 87 to 108 months imprisonment, to a sentence of only one day in prison. The Government argues that such a large departure is patently unreasonable. Its argument rests on two cases: Green, which reversed a downward departure of 15 levels, see 105 F.3d 1321, and Colace, which reversed a downward departure of 19 levels, see 126 F.3d at 1229.
 
 
 23
 But neither Green nor Colace support the Government's position that reasonableness of a departure turns solely on its extent. Rather, reasonableness depends upon "the amount and extent of the departure in light of the grounds for departing. " Williams, 503 U.S. at 203 (emphasis added). We found the downward departures unreasonable in Green and Colace because there were no grounds to warrant any downward departure for aberrant behavior in those cases, let alone a significant departure. In Green, the defendant was involved in a thoroughly-planned marijuana operation for at least a few months. We found that no extenuating circumstances surrounded defendant's criminal behavior and that no rationale "other than the money" was proffered. Green, 105 F.3d at 1323. Thus, in Green, we found no aberrant behavior.
 
 
 24
 The defendant in Colace committed at least twelve separate bank robberies over a period of eleven weeks, "each requiring independent thought and planning, each putting a new set of victims in jeopardy, each yielding separate loot." Colace, 126 F.3d at 1232. Colace also committed the separate crime of fleeing probation. See id. Based on those unsympathetic facts, we concluded that "no aberrant behavior departure was appropriate; not even close." Id. In contrast to Green and Colace, here the district court's finding of aberrant behavior properly was based on a convergence of factors.
 
 
 25
 Furthermore, the defendants in Green and Colace were sentenced to probation in direct violation of statutory authority requiring a mandatory minimum prison sentence. In contrast, Brenda is serving the statutorily required five-year mandatory minimum prison term for her firearm offense.
 
 
 26
 The district court's downward departure by 21 levels was not unreasonable. After considering all of the evidence, the court concluded that it had "much difficulty in sentencing this defendant to time in the penitentiary with the resulting deprivation of her children because of her aberrant behavior." "A district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Koon, 518 U.S. at 98. Giving the district court the deference it is due, we conclude that it did not abuse its discretion by departing downward.
 
 V.
 
 27
 We now turn to the issue on cross-appeal. We are asked to consider whether the district court had discretion to depart downward on the mandatory minimum five-year sentence for the firearm offense.
 
 
 28
 "Generally, district courts do not have authority to depart from mandatory minimum sentences imposed by statute." United States v. Valente, 961 F.2d 133, 134 (9th Cir.1992). A district court may depart downward from a mandatory minimum sentence imposed by statute when the government moves for downward departure because of a defendant's "substantial assistance" to authorities.[3] Id. Under 18 U.S.C. § 924, "[w]hoever, during and in relation to any crime of violence .... uses or carries a firearm, shall ... be sentenced to imprisonment for five years." 18 U.S.C. § 924. Because Brenda did not assist the government, the district court lacked authority to depart downward from the mandatory minimum sentence of five years imprisonment for her offense.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 The Honorable Robert M. Takasugi, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [2]
 When a defendant is sentenced for using a firearm in a crime of violence under 18 U.S.C. § 924, a court may not impose a term of imprisonment that runs concurrently with any other term of imprisonment. See 18 U.S.C. § 924
 
 
 [3]
 Brenda points out that a district court may have discretion to depart downward from a mandatory minimum sentence imposed by statute based on the "safety valve" provisions of 18 U.S.C. § 3553(f). Even if this is the case, Brenda does not qualify for a downward departure under this provision because it requires that "the defendant did not use violence or ... possess a firearm ... in connection with the offense." 18 U.S.C. § 3553(f)